PI, INC., Plaintiff,

v.

QUALITY PRODUCTS, INC., James S. Renaldo and Lee Ogle, Defendants.

No. 95 Civ. 1723 (JGK).

United States District Court,
S.D. New York.

Dec. 22, 1995.

Elliot I. Miller, Kleban & Samor, P.C., Southport, CT, for plaintiff.

Richard W. Cohen, Robinson Borg Leinwand Reich Genovese & Gluck P.C., New York City, for defendant Quality, Inc.

Sam Sexton, Jr., Sexton Law Firm, P.A., Fort Smith, AR, for defendant Lee Ogle.

John B. Glendon, Pepper, Hamiliton & Scheetz, New York City, M. Duncan Grant, Marian C. Miller, Pepper, Hamilton & Scheetz, Philadelphia, PA, for defendant James S. Renaldo.

---

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff, PI, Inc. ("PI") has sued the defendants Quality Products, Inc. ("Quality"), James S. Renaldo, and Lee Ogle on various claims arising from a merger agreement. In its Amended Complaint, the plaintiff alleges (1) a breach of contract claim against Quality; (2) a tortious interference claim against defendants Ogle and Renaldo; and (3) fraud against all three defendants. Subject matter jurisdiction over this matter is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1).

Several motions are pending. Quality has moved to dismiss the plaintiff's first cause of action, the breach of contract claim, for lack of venue pursuant to Fed.R.Civ.P. 12(b)(3). Renaldo and Ogle have moved to dismiss the tortious interference and fraud claims pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction and pursuant to Fed. R.Civ.P. 12(b)(3) for improper venue. All three defendants seek dismissal of the fraud claim pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with sufficient particularity and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, the defendants seek an order transferring the entire action to the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1404(a).

After hearing oral argument on the motions, the Court (1) grants Quality's motion to dismiss the breach of contract claim for lack of venue pursuant to 12(b)(3); (2) grants the motions by defendants Ogle and Renaldo to dismiss the tortious interference claim for lack of venue pursuant to Fed.R.Civ.P. 12(b)(3) and for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2); (3) denies Ogle's motions to dismiss the fraud claim for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), for improper venue pursuant to Fed.R.Civ.P. 12(b)(3), and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6); (4) grants Ogle's motion to dismiss the fraud claim for failure to plead fraud with sufficient particularity; (5) grants Renaldo's motions to dismiss the fraud claim for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2); (6) grants Quality's motion to dismiss the fraud claim for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6); (7) denies the plaintiff's motion to amend the complaint for the second time; and (8) denies as moot the defendants' motions to transfer this action to the Middle District of Florida.

### I.

When considering motions to dismiss, the Court " 'must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.' " *Gant v. Wallingford Bd. of Education*, 69 F.3d 669, 673 (2d Cir.1995) (considering a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6)) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994)); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985) (when deciding a motion to dismiss for lack of jurisdiction pursuant to 12(b)(2) without an evidentiary hearing, all doubts must be resolved in favor of party asserting personal jurisdiction).

The current action arises out of a merger agreement between Quality, a Delaware corporation with its principal place of business in Tampa, Florida, (Am.Compl. ¶ 2), and PI, a Massachusetts corporation with its office

and principal place of business in Hyannis, Massachusetts. (Am.Compl. ¶ 1.) According to the terms of the merger, a wholly owned subsidiary of Quality known as Q.P.I. Consumer Products Corporation ("QPI"), a Florida corporation with its office and principal place of business in Tampa, Florida, would acquire PI Consumer Products Corporation ("PICPC"), a wholly owned subsidiary of PI incorporated in Massachusetts. (Am.Compl. ¶¶ 1–2.) Defendant James S. Renaldo is a citizen of Florida and was president, chief executive officer, and general counsel of Quality at all times relevant to this litigation. (Am.Compl. ¶ 3.) Lee Ogle is a citizen of Arkansas who allegedly represented to the chairman, president, and director of PI that he controlled Quality through shares ostensibly owned by third parties. (Am.Compl. ¶ 4.)

In January 1993, Scott Smith, an officer and director of PI and a representative of Sentinel, a subsidiary of PI, went to Arkansas to meet with defendants Renaldo and Ogle in order to market Sentinel products to Quality. (Am.Compl. ¶ 7, 9.) At this meeting, Smith informed the defendants that PI had recently placed PICPC on the market. (Am.Compl. ¶ 9.) The defendants indicated that Quality would purchase PICPC; however, no further negotiations occurred at that time because Smith lacked proper authority. (Am.Compl. ¶ 9.) Instead, the parties agreed to conduct negotiations for PICPC in February at the Toy Fair held in New York City. (Am.Compl. ¶ 9.)

In February, John Bambara, the chairman and chief executive officer of PI, and J. Anthony Glydon, the president of PI, attended the Toy Fair. Also present were Renaldo, Ogle, and Smith. (Am.Compl. ¶¶ 10, 11.) In a New York hotel room the evening before the Toy Fair, Smith allegedly told Ogle and Renaldo that Bambara said any merger agreement must include payment of $700,000 to cover PI's current debt. (Am.Compl. ¶ 10.) Ogle agreed to this term. (Am. Compl. ¶ 10.) In addition, Ogle and Renaldo stated that Quality could issue stock to PI in return for the sale, and that such stock "could and would be registered within 180 days of the closing." (Am.Compl. ¶ 10.) Smith suggested that Ogle and Renaldo meet with Bambara at the Toy Fair. (Am.Compl. ¶ 10.)

At the Toy Fair, Ogle met with Bambara alone, at which time Ogle allegedly told Bambara that although he, Ogle, had no official position in PI, he in fact dominated and controlled Quality through the shares he owned registered in the names of nominees. (Am.Compl. ¶ 12.) Ogle also stated that he dominated Renaldo. (Am.Compl. ¶ 12.) In response to Ogle's offer to arrange for Quality to acquire PICPC for consideration that included 800,000 shares of Quality common stock which were restricted securities, Bambara explained that unregistered shares of Quality stock would not be acceptable consideration for the merger because PI needed immediately available funds. (Am.Compl. ¶ 13.) Ogle allegedly agreed to cause Quality to register the 800,000 shares of Quality stock and said that he would personally make sure those shares were registered with the SEC within 180 days of the effective date of the sale of PICPC. (Am.Compl. ¶ 13.) Relying on this representation, Bambara allegedly agreed to the sale of PICPC to Quality. (Am.Compl. ¶ 13.)

Subsequently, Ogle and Bambara met with Renaldo, Glydon, and Smith to tell them about this agreement. (Am.Compl. ¶ 14.) At this meeting, Renaldo did not disagree with any statements Ogle made or indicate that Ogle lacked the power to enter into such an agreement. (Am.Compl. ¶ 14.) Relying on the representations of Ogle and Renaldo, the plaintiff allegedly agreed to sell PICPC to Quality. (Am.Compl. ¶ 14.) The parties eventually executed a Plan of Merger on about February 16, 1993, and the Articles of Merger were executed by PICPC on about March 9, 1993 and by QPI on March 12, 1993. (Am.Compl. ¶ 15.) Under § 8(d) of the Plan of Merger, Quality stated that it

represents, agrees and warrants that it will file all initial and continuing documentation necessary to provide for the registration of the 800,000 restricted securities within 180 days after the effective date of merger.

(Am.Compl. ¶ 16.) Although not cited in the Amended Complaint, the Plan of Merger

contained an integration clause that provided that

> [t]his agreement constitutes the entire agreement between the parties; there are no agreements, warranties, or representations, express or implied, except those expressly set forth herein. All agreements, representations, and warranties contained in this agreement shall apply as of the closing date and shall survive the closing of this agreement.

(Quality's Notice of Mot., Ex. 2 at 7, § 20 (merger agreement).)

## II.

■ The Court first turns to Quality's motion to dismiss the breach of contract claim for lack of venue pursuant to Fed.R.Civ.P. 12(b)(3).[1]

■ The amended complaint alleges diversity jurisdiction under 28 U.S.C. § 1332. (Am.Compl. ¶ 5.) Accordingly, the venue statute applicable to this action is 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if

there is no district in which the action may otherwise be brought.

Once an objection to venue has been raised, the plaintiff has the burden of showing that venue is proper. *Reina v. Morgan Drive Away Inc.*, No. 94–6495, 1995 WL 66585, at *1 (S.D.N.Y. Feb. 15, 1995). Because the current action involves multiple defendants and claims, PI must show that venue is proper for each claim. *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, No. 92–9002, 1994 WL 74860, at *3 (S.D.N.Y. Mar. 7, 1994). The plaintiff alleges that venue over the breach of contract claim is proper under § 1391(a)(2) or § 1391(a)(3).[2]

■ Section 1391(a)(2) fails to provide a basis for venue for the plaintiff's breach of contract claim. Under this section, venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2), and venue may lie in more than one district. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir.1992). In determining venue under this section, a court must apply a substantial contacts test. *Zitman v. Tucker*, No. 94–6658, 1994 WL 713693, at *1 (S.D.N.Y. Dec. 21, 1994); *Jordache Enterprises*, 1994 WL 74860, at *3. Venue is proper in each district that is the situs of a substantial part of the events or omissions giving rise to the claim.

■ In determining whether venue is proper for a breach of contract action under § 1391(a)(2), courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach

---

1. During oral argument on this motion, the plaintiff stated that the complaint states a claim for breach of an oral contract allegedly formed between the parties at the Toy Fair. There is no such claim in the Amended Complaint. In its Amended Complaint, the plaintiff does not indicate that it is basing its allegations on an oral contract; in fact, the complaint refers to the written merger agreement executed by the parties as well as the particular provision of the Plan of Merger that set out Quality's promise to register the 800,000 shares of stock at issue. *See* Am.Compl. ¶¶ 15, 16. In addition, the Plan of Merger itself expressly states that "there are no agreements, warranties, or representations, express or implied" except those contained in the written merger agreement. Quality's Notice of Mot., Exh. 2 at 7 (merger agreement). This

provision effectively eliminates any breach of contract claim the plaintiff might have had against Quality based on any oral agreements made prior to the written contract, even if the Amended Complaint had purported to assert such a claim.

2. The plaintiff does not argue that § 1391(a)(1) supports venue over this claim. Indeed, § 1391(a)(1) does not support venue in this district for any of the claims in the amended complaint because the defendants reside in different states, and none of them resides in New York. Quality is a Delaware corporation with its principal place of business in Florida, Ogle is a Arkansas domiciliary, and Renaldo resides in Florida.

occurred. *Jordache,* 1994 WL 74860, at \*4; *JSP Int'l v. Tri–Tech Group, Inc.,* No. 95–2422, 1995 WL 413299, at \*5 (S.D.N.Y. July 13, 1995) (Patterson, J.) (venue in breach of contract action proper where contract is negotiated and executed or where it was to be performed). The plaintiff argues that the negotiations between the parties at the Toy Fair constitute a "substantial part" of the events giving rise to the breach of contract claim, thus justifying venue in this district.

■ Although § 1391(a)(2) permits venue to exist in more than one district, New York lacks the substantial nexus to the plaintiff's breach of contract claim that § 1391(a)(2) demands. According to the Amended Complaint, the initial discussions for the merger occurred in Arkansas between Ogle and Smith. Although the details of the transfer—including Ogle's promise that Quality would give PI 800,000 shares of unregistered stock that Quality would register within 180 days—were discussed at the Toy Fair in New York, these were at most part of the negotiations leading to the contract which was neither finalized nor executed in New York. The parties did not execute the contract until some time after the Toy Fair, when the parties had returned to the domiciles of their respective corporations. In his affidavit, Renaldo states that he prepared a Plan of Merger and Articles of Merger when he returned to Tampa from the Toy Fair and that Q.P.I. executed both in Florida. (Renaldo Notice of Mot., Exh. 3 at ¶¶ 7, 8 (Renaldo Aff.).) In addition, no part of the contract was to be performed in New York, and any breach of the merger agreement would have occurred outside this district. Had Quality performed its contractual duty to "file all initial and continuing documents necessary to provide for the registration of the 800,000 restricted securities within 180 days of the effective date of the merger," it would have prepared such documents at its headquarters in Florida and sent them to the SEC in Washington, D.C. The plaintiff's argument that "the breach of contract effectively occurred in New York" carries no weight: a contract cannot be breached until it exists.

■ Section 1391(a)(3) also fails to support venue over the breach of contract claim in this district. This section permits venue in a district in which the defendants are subject to personal jurisdiction at the time the action is commenced, but only if there is no other district in which the action could otherwise be brought. Section 1391(a)(3) does not apply to the present case because at the time this action was commenced, venue for the plaintiff's breach of contract claim was proper in Florida under § 1391(a)(2). As explained above, the merger agreement has significant contacts with Florida: Quality and its subsidiary QPI are based in Florida, the "Plan of Merger" was drafted in Florida and executed by Quality in Florida, Quality's Board of Directors and shareholders acted and ratified the transaction in Florida, and any breach of the contract occurred in Florida.

Accordingly, the Court dismisses the breach of contract claim against Quality without prejudice for lack of venue.

### III.

The Court next considers the motions by Ogle and Renaldo to dismiss the tortious interference claim for lack of personal jurisdiction and lack of venue. The Court grants both of these motions and dismisses the plaintiff's tortious interference claim without prejudice.

■ The Court lacks personal jurisdiction over Renaldo and Ogle for purposes of the tortious interference claim. When the court relies solely on the pleading and affidavits alone to determine the existence of jurisdiction, as it does in this case, the plaintiff must make a prima facie showing of jurisdiction in order to defeat the motion. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). The court must interpret the pleadings and affidavits in the light most favorable to the plaintiff. *Id.* Because the plaintiff has failed to make the necessary prima facie showing, the tortious interference claims against Ogle and Renaldo are dismissed without prejudice for lack of personal jurisdiction.

■ A court sitting in diversity applies the law of the forum state in determining whether it has personal jurisdiction over a

defendant. *See CutCo,* 806 F.2d at 365. The plaintiff asserts that personal jurisdiction exists over the defendants Renaldo and Ogle on the basis of the New York long-arm statute, which provides for jurisdiction over nondomiciliary defendants in certain circumstances. The plaintiff points to N.Y. CPLR § 302(a)(2), which provides in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> .    .    .    .    .
>
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act.
>
> .    .    .    .    .

CPLR § 302(a)(2) (McKinney 1990). It is not sufficient for jurisdiction under this section that the defendant has performed an act in New York; the cause of action must also arise from that act.

██ In the Amended Complaint, the plaintiff alleges that Ogle and Renaldo tortiously interfered with the performance of a contract by preventing Quality from registering shares of stock. (Am.Compl. ¶ 19.) The plaintiff has failed to make even a prima facie showing that this alleged tort occurred in New York. The Amended Complaint states that Renaldo and Ogle caused Quality to breach its agreement to register 800,000 shares of unregistered stock by "engag[ing] in periodic sales of shares of Quality stock owned by them," and that Renaldo "stated to employees of Quality on several occasions that he would not permit the 800,000 shares to be registered." (Am.Compl. ¶¶ 19, 20). The plaintiff does not plead that either of these activities took place in New York. Accordingly, because the plaintiff has failed to make even a prima facie showing that the alleged tortious interference occurred in New York, N.Y. CPLR § 302(a)(2) cannot provide personal jurisdiction over Ogle and Renaldo.

██ Venue in this district for the plaintiff's tortious interference claim is also improper. Section 1391(a) again determines the standard for determining the propriety of venue. It is clear that neither § 1391(a)(1) nor § 1391(a)(3) provides a basis for venue for this claim: the defendants are domiciled in different states, and this Court lacks personal jurisdiction over Renaldo and Ogle. Section 1391(a)(2) also fails to support venue in this district. In the Amended Complaint, the plaintiff alleges that Renaldo and Ogle interfered in the contractual relationship between the plaintiff and Quality. As explained above, however, the plaintiff has failed even to allege a prima facie basis to conclude that tortious interference occurred in New York. The plaintiff contends that there is nevertheless a sufficient nexus to New York for venue under § 1391(a)(2) because Ogle made false statements, to which Renaldo acquiesced by his silence, at the Toy Fair. This argument is unpersuasive. The alleged misrepresentations were made before a contract between PI and Quality even existed. Because the timing of these statements renders them irrelevant for the plaintiff's tortious interference claim, they cannot constitute a "substantial part" of the plaintiff's tortious interference claim for venue purposes.

Accordingly, the tortious interference claim against Ogle and Renaldo is dismissed both for lack of personal jurisdiction and for improper venue.

### IV.

Finally, the defendants have moved to dismiss the plaintiff's third cause of action alleging fraud. In the Amended Complaint, the plaintiff alleges that it relied on Quality's false representations that it would register 800,000 restricted shares of Quality stock and on the alleged misrepresentation by Ogle and Renaldo that Ogle would cause Quality to register the shares within 180 days of the planned merger. (Am.Compl. ¶ 22.) Renaldo and Ogle contend that this Court lacks personal jurisdiction over them for this claim. In addition, Renaldo, Ogle, and Quality argue that the claim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue, Fed.R.Civ. 12(b)(6) for failure to state a claim, and Fed.R.Civ. 9(b) for failure to plead with sufficient particularity. The Court first considers whether it has personal jurisdiction

over Renaldo and Ogle, and then turns to the motions alleging improper venue, failure to state a claim, and failure to plead with sufficient particularity, in that order. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir.1963) (holding that when a case involves motions to dismiss for lack of jurisdiction, improper venue, and failure to state a claim, the court must consider jurisdiction and venue first, in that order).

Although Quality does not challenge the Court's jurisdiction, both Ogle and Renaldo argue that the Court lacks personal jurisdiction over them on the fraud claim. As discussed above, N.Y. CPLR § 302(a)(2) authorizes personal jurisdiction over a defendant for a cause of action arising from a tortious act committed in this district. To satisfy New York's long-arm statute, the complaint must "adequately frame[ ] a cause of action in tort arising from those acts." *Evans v. Planned Parenthood of Broome County, Inc.*, 43 A.D.2d 996, 997, 352 N.Y.S.2d 257, 259 (3d Dep't 1974). The plaintiff alleges that this provision subjects Renaldo and Ogle to personal jurisdiction in New York because they committed a tortious act in this state by making fraudulent misrepresentations while in New York City in order to induce plaintiff to enter into the contract. Ogle and Renaldo contend that the plaintiff has failed to allege that they committed a tort in this district, as N.Y. CPLR § 302(a)(2) requires, because the plaintiff has merely converted a breach of contract action into a tort claim in order to obtain jurisdiction.

Under New York law,[3] acts that give rise to a breach of contract claim may also constitute a distinct claim for fraud if the party misrepresents a presently existing fact. *See Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir.1992) (citing New York cases); *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898–99 (2d Cir.1980). Accordingly, a contracting party can be held liable for fraud if, at the time of contracting, the party made a false statement of intention that "relates to an agreement between the parties." *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 122, 629 N.Y.S.2d 1009, 1014, 653 N.E.2d 1179, 1184 (1995); *see Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958) ("one 'who fraudulently makes a misrepresentation of . . . intention . . . for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction' is liable for the harm caused by the other's justifiable reliance upon the misrepresentation.") (quoting 3 Restatement of Torts § 525); *Sabo v. Delman*, 3 N.Y.2d 155, 162, 164 N.Y.S.2d 714, 718, 143 N.E.2d 906, 909 (1957) ("[A] contractual promise made with the undisclosed intention not to perform it constitutes fraud."); *see also Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir.1992) (a promise made with a preconceived and undisclosed intention of not performing it can give

---

3. The Court applies New York law, the law of the forum, because the parties have not attempted to assert that the law of any state that might have an interest in this action conflicts with New York law. In his memorandum in support of his motion, the defendant Renaldo correctly states that federal courts sitting in diversity must look to the conflicts of law principles of the forum state in order to determine what substantive law governs. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Renaldo noted, however, that there was no conflict between Florida and New York law because both bodies of law would produce the same result. (Renaldo's Memo. in Support at 18 & n. 13.) The plaintiff stated in its brief in opposition that it "takes no issue with Renaldo's characterization of [New York and Florida] law," and agrees that the two bodies of law would produce the same result. (Plaintiff's Memo. in Opposition to Renaldo's Motion to Dismiss at

12.) None of the other parties raised a conflicts of law argument in its papers or at oral argument, and all parties relied extensively on New York law. Because the parties have not argued that the law of any other interested state conflicts with New York law, the Court will apply the law of New York, the forum state. *See R.E. Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426 (7th Cir.1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits."); *Forum Ins. Co. v. Zeitman*, No. 91–7980, 1995 WL 546949, at *4 n. 1 (S.D.N.Y. Sept. 13, 1995) (applying the law of the forum when plaintiff argued that New York law applied and defendant explicitly declined to argue the question); *Schreiber v. Camm*, 848 F.Supp. 1170, 1174 (D.N.J.1994) (applying law of forum state because parties presented no evidence of conflict between potentially applicable laws).

rise to a fraudulent inducement claim under New York law); *Sudul v. Computer Outsourcing Servs.*, 868 F.Supp. 59, 61–62 (S.D.N.Y.1994) (Martin, J.) ("In general, mere allegations of breach of contract do not give rise to a claim for fraud ... or fraudulent inducement.... However, New York's Court of Appeals has held that a contracting party can be held liable for fraud when, at the time of making a promise, he did not intend to keep it.") (citations omitted).

■ A cause of action for fraud can be maintained on the basis of allegations that a party made a collateral or extraneous misrepresentation that served as an inducement to the contract. *See Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003, 1004 (1986) (upheld lower court's decision not to dismiss fraud claim that alleged a misrepresentation of present fact that was "collateral to, but which was the inducement for the contract").

■ Numerous Appellate Division decisions have held, however, that a cause of action for fraud cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations. *See, e.g., Caniglia v. Chicago Tribune–New York News Syndicate, Inc.*, 204 A.D.2d 233, 612 N.Y.S.2d 146, 147 (1st Dep't 1994) ("a cause of action does not lie where ... the only fraud alleged merely relates to the contracting party's alleged intent to breach a contractual obligation"); *Locascio v. Aquavella*, 185 A.D.2d 689, 689, 586 N.Y.S.2d 78, 79 (4th Dep't 1992) (dismissing claim for fraud because claim alleges only that the defendants never intended to perform their contractual obligations); *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233,

234, 574 N.Y.S.2d 58, 59 (2d Dep't 1991) (holding that where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie"); *see U.S. East Telecommunications, Inc. v. US West Communications Servs., Inc.*, 38 F.3d 1289, 1301–02 (2d Cir.1994) (noting disagreement in New York cases); *Kenevan v. Empire Blue Cross and Blue Shield*, 791 F.Supp. 75, 80 (S.D.N.Y. 1992) (same); *Sudul*, 868 F.Supp. at 62 (noting that some New York courts have held that "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract") (citing cases).

Neither the New York Court of Appeals nor the Court of Appeals for the Second Circuit has ruled definitively on this issue;[4] however, the numerous decisions of the Appellate Division are persuasive authority of the law in New York which this Court must follow. *See D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc.*, 873 F.Supp. 786, 796 (E.D.N.Y.1995) (Wexler, J.) (dismissing fraud claim because it "state[s] nothing more than breaches of promises of future performance that constitute the express terms of the contract, not promises collateral or extraneous to the contract"); *Sudul*, 868 F.Supp. at 62–63 (dismissing fraud claim because defendants allegedly lied only about their intention to fulfill their contractual obligations; the plaintiff does not even mention any "collateral or extraneous" promises); *GSGSB, Inc. v. New York Yan-*

**4.** In *Rocanova v. Equitable Life Assurance Soc. of the United States*, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 343, 634 N.E.2d 940, 944 (1994), the Court of Appeals indicated its agreement with the Appellate Division decisions when it discussed a lower court's dismissal of a fraud claim that alleged only that "the contracting party did not intend to meet its contractual obligations." *See Sudul*, 868 F.Supp. at 62 (citing *Rocanova* as indicating the position of the Court of Appeals on this issue). The Court of Appeals

for the Second Circuit has also not determined this issue because the plaintiff in *U.S. East Telecommunications* failed to present any evidence that the defendant acted with fraudulent intent. *Id.* at 1302. ("We need not, however, resolve whether [the plaintiff's] evidence supports a conclusion that [the defendant] violated a 'legal duty independent of the contract itself,' or indeed whether such evidence is required to uphold [the plaintiff's] fraud claim.").

*kees*, 862 F.Supp. 1160, 1177 (S.D.N.Y.1994) (Kram, J.) (holding that under New York law, "[a] contract action may not be converted into one for fraud by the mere additional allegation that the contracting party did not intend to meet his contractual obligation") (citing cases from the First and Second Departments of the Appellate Division); *Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F.Supp. 1286, 1294 (S.D.N.Y.1989) (Sand, J.) (dismissing claim for fraud based solely upon allegations that defendants made contracts knowing they would not abide by them).

■ The plaintiff has failed to allege a distinct claim for breach of contract against Renaldo because Renaldo is a corporate officer of Quality who is alleged merely to have promised that his corporation would perform its contractual obligation to register 800,000 shares of stock. A corporate officer does not commit a tort by promising that his corporation will fulfill its express contractual promises. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir.1993) (finding that a corporate director had not committed a tort by representing that his corporation would perform its contractual duties; stating that "[e]very party to a contract commits himself to good faith performance. That does not transmute a breach of contract into a tort."). Because Renaldo's alleged misrepresentation that he would cause Quality to register 800,000 shares of unregistered securities was not a promise that involved terms that were "collateral" or "extraneous" to the terms of the written contract, the plaintiff has failed to state a cause of action for fraud distinct from a claim for breach of contract. Accordingly, N.Y. CPLR § 302(a)(2) does not support the exercise of personal jurisdiction over Renaldo. Renaldo's motion to dismiss the fraud claim against him for lack of personal jurisdiction is therefore granted.

■ In contrast, there is personal jurisdiction over Ogle. Unlike Renaldo, Ogle was not an officer of Quality and was not a party to the contract between Quality and the plaintiff. Ogle's representation that as an alleged control person of Quality he would cause Quality to register the shares was different from Quality's representation that it would register the shares, and indeed is also separate from Renaldo's representation concerning what he would cause Quality to do as an officer of the company. Ogle's alleged misrepresentation was collateral to and different from Quality's contractual representations that it would register the shares. The plaintiff's allegations against Ogle amount to a claim for fraud: the plaintiff asserts that it relied on this misrepresentation, entered into the contract with Quality, and sustained injury because Ogle in fact had no intention of causing Quality to register the shares of stock. In addition, the complaint alleges that Ogle made these misrepresentations in New York. Accordingly, the Court has personal jurisdiction over Ogle pursuant to N.Y. CPLR § 302(a)(2). Ogle's motion to dismiss the fraud claim for lack of personal jurisdiction is therefore denied.

■ The defendants' motions challenging venue over the plaintiff's fraud claim against Quality, Renaldo, and Ogle also must be denied. Venue is proper in this Court for this claim pursuant to § 1391(a)(2), which authorizes venue when a "substantial part" of the events giving rise to the claim occurred in the district. In the present case, the plaintiff has clearly met this burden by pleading that the defendants made the alleged fraudulent misrepresentations at the Toy Fair in New York City.

■ The defendants Ogle, Renaldo, and Quality also allege that the plaintiff's fraud claim should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6) for failing to state a claim. A motion to dismiss must be denied unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief.' " *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). As explained above, the plaintiff has stated a claim for fraud against Ogle but not against Renaldo.

■ The plaintiff has also failed to state a cause of action for fraud against Quality. The plaintiff's fraud claim against Quality alleges only that Quality breached its promise to perform in the future the express terms of the contract. The plaintiff's two

causes of action against Quality—one for breach of contract and the other for fraud—allege exactly the same thing: that Quality failed to fulfill its promise to file the necessary documents for the registration of the 800,000 shares of restricted securities within 180 days of the effective date of the merger. This promise is explicitly contained in the Plan of Merger. (Quality's Notice of Mot., Ex. 2 at 3–4 (merger agreement).) The additional allegation that Quality did not intend to fulfill its express contractual duty does not create an independent fraud claim. Because Quality's failure to fulfill its contractual obligations is a breach of contract, the fraud claim is duplicative of the breach of contract claim the plaintiff already alleges in the complaint and accordingly must be dismissed. *See Caniglia,* 204 A.D.2d 233, 612 N.Y.S.2d at 147; *Locascio,* 185 A.D.2d at 689, 586 N.Y.S.2d at 79; *McKernin,* 176 A.D.2d at 234, 574 N.Y.S.2d at 59; *D.S. America (East), Inc.,* 873 F.Supp. at 796; *Sudul,* 868 F.Supp. at 62–63; *GSGSB, Inc. v. New York Yankees,* 862 F.Supp. at 1177; *Vista Co. v. Columbia Pictures Indus., Inc.,* 725 F.Supp. at 1294.

▆▆▆▆ Finally, the fraud claims against all three defendants must be dismissed for failure to plead fraud with the particularity Fed.R.Civ.P. 9(b) requires. Rule 9(b) "requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity,' an exception to the generally liberal scope of pleadings allowed by Rule 8." *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986). Rule 9(b) "is intended to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against a strike suit.'" *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994) (quoting *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991)). Ordinarily, allegations of fraud cannot be founded solely "upon information and belief," except to those matters particularly within the opposing party's knowledge; in the latter instance, allegations must be accompanied by statements of facts upon which the belief is founded. *Luce,* 802 F.2d at 54 n. 1. In order to satisfy Rule 9(b), the complaint must "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d at 1175. Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *Shields,* 25 F.3d at 1128. This strong inference can be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Mere nonperformance of contractual agreements does not give rise to an inference of fraudulent intent unless "a defendant violated an agreement so maliciously and so soon after it is made that his desire to do so before he entered into the agreement is evident." *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 185 (2d Cir.1995).

▆▆▆ The plaintiff has failed to allege any facts to support its fraud allegations. The plaintiff's fraud claim is based only on the defendants' failure to fulfill its contractual obligations and "upon information and belief" that the defendants falsely represented their intention to fulfill their contractual duties at the time of contracting.[5] The plaintiff's allegations that Renaldo had falsely represented to persons at Morgan Stanley that Quality had in fact timely filed the necessary SEC documents, (Amd.Compl. ¶ 24), fails to support an inference of fraudulent intent existing at the time of the Merger Agreement. The plaintiff has failed to allege any other facts indicating that the defendants did not plan to register the shares at the time the

---

5. The relevant section of the Amended Complaint alleges that

> [u]pon information and belief, at the times Quality, and Ogle and Renaldo, made such representations, agreement, and warranty, Quality, and Ogle and Renaldo, wrongfully and fraudulently did not intend to register, and (in the case of Ogle and Renaldo) cause or permit Quality to register such 800,000 shares in accordance with such agreement....

(Am.Compl. ¶ 22.)

parties agreed to merge. The plaintiff's "conclusory allegations" based on defendants' failure to register shares and to otherwise cover-up fraud do not satisfy the Rule 9(b) requirements. *See Mills*, 12 F.3d at 1176 (cannot satisfy Rule 9(b) by alleging simply that the defendant made a contract to register shares and never performed any of them because "[a] contract may be breached for legitimate business reasons"); *American Mobile Communications, Inc. v. Nationwide Cellular Serv., Inc.*, [1992] Fed.Sec.L.Rep. (CCH) ¶ 97,002 at 94,379, 1992 WL 232058 (S.D.N.Y. Sept. 3, 1992) (Sand, J.) (complaint charging fraud must allege facts to support the defendants' present intention to disregard its promise to register purchase price shares promptly in order to survive Rule 9(b)).

Accordingly, the Court dismisses without prejudice the plaintiff's third cause of action alleging fraud against Renaldo for lack of personal jurisdiction. The Court dismisses the fraud claim against Quality for failure to state a claim for relief pursuant to Fed. R.Civ.P. 12(b)(6). The Court dismisses without prejudice the plaintiff's fraud claim against Ogle for failure to allege fraud with sufficient particularity pursuant to Fed. R.Civ.P. 9(b).

## V.

The plaintiff has filed a motion to amend its complaint for the second time pursuant to Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., etc.—the leave sought should, as the rules require, be 'freely given.'" *Rachman Bag Co. v. Liberty Mutual Ins. Co.*, 46 F.3d 230, 234 (2d Cir.1994) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *see also Acito v. IMC-ERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (noting that "there must be a good reason" to deny a motion for leave to amend, particularly when dismissal of the complaint was based on Rule 9(b)). When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims, however, the court is free to deny leave to amend. *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying leave to amend because "permitting the proposed amendment would have been especially prejudicial given the fact that ... [the defendant] had already filed a motion for summary judgment"); *Reisner v. General Motors Corp.*, 511 F.Supp. 1167, 1172 (S.D.N.Y.1981), *aff'd*, 671 F.2d 91 (2d Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982); *Bymoen v. Herzog, Heine, Geduld, Inc.*, No. 88–1796, 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991) (Wood, J.) (denying leave to amend the complaint because "it appears to the court that plaintiff is raising this new claim in anticipation of an adverse ruling" on the defendants' motion for summary judgment dismissing her complaint); *CL–Alexanders Laing & Cruickshank v. Goldfeld*, 739 F.Supp. 158, 167 (S.D.N.Y.1990) (Musakey, J.) ("When the motion [to amend] is made after discovery has been completed and a motion for summary judgment has been filed, leave to amend is particularly disfavored because of the resultant prejudice to the defendant."). Such a motion imposes considerable additional expense on all parties. In addition, leave to amend may be denied on grounds of futility, such as when the supplemental allegations do not cure the deficiencies in the complaint. *See Acito*, 47 F.3d at 55.

In this case, the plaintiff commenced the action on March 13, 1995. The plaintiff moved to file an amended complaint on June 5, 1995, three days after it had responded to defendants Ogle and Renaldo's first motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b) or, in the alternative, to transfer the action pursuant to 28 U.S.C. § 1404. The defendants did not oppose this motion to amend, and on June 15, 1995, the Court deemed the amended complaint filed and served. The defendants then filed the extensive motions outlined above to dismiss the amended complaint and to challenge personal jurisdiction and venue. After the parties fully briefed those motions, and after the Court heard oral argument, the plaintiff moved again to amend its complaint for the

second time, apparently anticipating an adverse result after oral argument on its current amended complaint. The plaintiff seeks to amend the complaint to eliminate the claim for tortious interference, to add a claim against Ogle for breach of an "oral contract," and to add allegations to support the plaintiff's fraud claim and to support its allegations that Renaldo is subject to personal jurisdiction in this Court.

The plaintiff claims that it seeks to amend its complaint yet again because additional facts regarding the fraud allegations have only recently been revealed through discovery, the damages for the tortious interference claim are redressable by the fraud claim, the breach of oral contract claim against Ogle is a "natural extension" of the claims already alleged against him, and given the newly revealed evidence, the plaintiff no longer bases its fraud claim solely upon information and belief. The defendants oppose the plaintiff's motion to amend on the grounds that such amendment would be futile and is dilatory and in bad faith.

The plaintiff's motion to amend its complaint is denied because its timing demonstrates that it is clearly a dilatory tactic to avoid the dismissal of this action. The motions to dismiss were fully briefed and argued, at considerable expense, before the plaintiff sought to amend its complaint for yet another time. This is also the second time that the plaintiff has used the tactic of waiting for the defendants to file motions to dismiss before moving to amend the complaint.

Because the plaintiff's fraud claim against Ogle is dismissed without prejudice, the plaintiff is of course free to file a new complaint in an effort to plead this claim with the particularity Rule 9(b) requires. It is also free to bring the other claims that are dismissed without prejudice in a district with personal jurisdiction over the defendants and where venue is proper. However, the proffered amended complaint is potentially futile. Most notably, the plaintiff now seeks to bring an oral contract claim against Ogle, which raises the same problem that the plaintiff faced in its claims against Quality—the proffered oral contract claim would appear to duplicate the fraud claim the plaintiff has already pleaded against Ogle.

In addition, if the plaintiff filed a new complaint in this district, it would then be necessary to consider any appropriate motion under 28 U.S.C. § 1404(a), which authorizes transfer of venue for "the convenience of the parties and witnesses, in the interest of justice . . . ." At this time the Court denies as moot the defendants' motions to transfer this action to the District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). It is not necessary to reach this issue because all claims against the defendants have been dismissed, and the defendants specifically urged the Court at oral argument to transfer this case to Florida only if the other motions were not granted. *See* 8/18/95 Tr. at 2–3; 13. If the plaintiff chooses to refile the case here, there are strong arguments supporting its transfer to Florida; however, the Court will consider that possibility only if it is necessary to do so.

## CONCLUSION

For all of the foregoing reasons, the Court orders the following: (1) the defendant Quality's motion to dismiss without prejudice the first cause of action of the Amended Complaint for breach of contract based on improper venue is GRANTED; (2) the motions by Ogle and Renaldo to dismiss without prejudice the second cause of action of the Amended Complaint for tortious interference based on lack of personal jurisdiction and improper venue are GRANTED; (3) the defendant Ogle's motion to dismiss the third cause of action for fraud based on lack of personal jurisdiction, improper venue, and failure to state a claim is DENIED; (4) the defendant Ogle's motion to dismiss without prejudice the third cause of action for fraud for failure to plead with sufficient particularity is GRANTED; (5) the defendant Renaldo's motion to dismiss without prejudice the third cause of action for fraud based on lack of personal jurisdiction is GRANTED; (6) the defendant Quality's motion to dismiss the fraud claim for failure to state a claim is GRANTED; (7) the plaintiff's motion to serve and file the second amended complaint is DENIED; and (8) the defendants' motions

to transfer this action to the Middle District of Florida are DENIED without prejudice as moot.

**SO ORDERED.**