Laura ZUBULAKE, Plaintiff,

v.

UBS WARBURG LLC, UBS Warburg, and UBS AG, Defendants.

No. 02 Civ. 1243(SAS).

United States District Court, S.D. New York.

Feb. 3, 2005.

James A. Batson, Liddle & Robinson, LLP, New York, New York, for Plaintiff.

Bettina B. Plevan, Proskauer Rose LLP, New York, New York, for Defendants.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

This case was filed close to three years ago, discovery closed on October 2, 2004,

defendants' motion for partial summary judgment was decided on January 7, 2005, and a trial is scheduled to begin on March 21, 2005. Nonetheless, defendants now move to amend their Answer to include an additional affirmative defense. Specifically, defendants seek to add an after-acquired evidence defense on the ground that plaintiff, in her employment application with UBS Warburg LLC ("UBS"), misrepresented the reasons why she was terminated by Credit Suisse First Boston ("CSFB") and Salomon Brothers ("Salomon").[1] Defendants contend that had UBS learned of plaintiff's misrepresentations, it would have immediately terminated her employment. For the following reasons, defendants' motion is denied.

## I. BACKGROUND

### A. The Alleged Misrepresentations

Defendants claim that plaintiff made the following misrepresentations on her employment application (dated July 14, 1999), which is signed and recites that she understands that the information provided is true and complete and that any false or misleading statements or omissions will be sufficient cause to justify refusal or termination of employment:

(1) her employment at CSFB ended in May 1999 (as opposed to August 1999)

(2) the reason for her departure from CSFB was "diff w/ mgmt philosophy—nature of job changed"

(3) her termination from CSFB was "voluntary"

(4) the reason for her departure from Salomon was to pursue a "better opportunity"

(5) her termination from Salomon was "voluntary"

See UBS Group, Employment Application, Employment History, attached as Ex. B to the Plevan Decl.

Plaintiff's personnel file produced by CSFB in March 2003 records Zubulake's last day of work as May 10, 1999, and a date of separation of August 16, 1999. The file also contains a document that describes a number of performance deficiencies, namely, a May 5th 1999 Memorandum from Jay Plourde entitled "Performance Deficiencies." See Memorandum, Ex. C to the Plevan Decl. The Memorandum states that plaintiff was insubordinate toward her supervisors and that her job performance was substandard. The Memorandum explicitly warns plaintiff that "[f]ailure to comply with the terms of this memo immediately or other failure to perform satisfactorily will result in further disciplinary action up to and including your immediate termination from this firm." Id.

Plaintiff's personnel file from Salomon could not be produced as it was destroyed during the attacks of September 11, 2001. Although hard copy records pertaining to plaintiff were not available, a computer printout (produced in March 2003) indicates that she was terminated for "unsatisfactory perf." 2/20/03 Computer Print–Out, Ex. D to the Plevan Decl.

---

1. The proposed affirmative defense reads as follows:

80. Subsequent to Zubulake's termination from employment with UBS Warburg, defendants learned that Zubulake provided false information regarding her employment history on her application for employment with UBS. Specifically, Zubulake indicated that her terminations from employment with both Credit Suisse First Boston and Salomon Smith Barney were voluntary, when in fact, they were not. Documents provided to UBS Warburg by Salomon Brothers and Credit Suisse First Boston subsequent to Ms. Zubulake's termination from employment with UBS Warburg, show that Ms. Zubulake's termination from employment with both companies [was] not voluntary. In addition, the documents provided show that

her terminations were based on performance problems and not for the reasons stated in her employment application. Had defendants known that two of Zubulake's former employers had terminated her employment, defendants would not have hired her. Further, had defendants learned of Zubulake's misrepresentations on her employment application during her tenure with UBS Warburg, defendants would have immediately terminated her employment. Under the doctrine of after-acquired evidence of wrongdoing, Zubulake is barred from recovering any front pay and any back pay for the period after defendants became aware of the foregoing facts.

Ex. A to the 1/14/05 Declaration of Bettina B. Plevan ("Plevan Decl."), defendants' attorney.

## B. Plaintiff's Termination Documents

In opposing the motion, plaintiff has submitted her Form U–5, Uniform Termination Notice For Securities Industry Registration, from CSFB and Salomon. *See* Affirmation of James A. Batson ("Batson Aff."), plaintiff's attorney, Exs. C & D. Both forms contain the following boxes under the Reason For Termination section: voluntary, deceased, permitted to resign, discharged, other. *See id.* Plaintiff's U–5 for CSFB has the "voluntary" box checkmarked as the reason for termination but does not provide an explanation. *See id.,* Ex. C. Plaintiff's U–5 for Salomon has the "other" box checkmarked as the reason for termination and provides "resign mutual" as the explanation. *See id.,* Ex. D.

Defendants have submitted a Central Registration Depository Registration Summary obtained from the National Association of Securities Dealers which they obtained on January 4, 2005. This document contains plaintiff's registration information pertaining to her prior employers. As with the U–5, plaintiff's Registration Summary states "Voluntary" as the reason for termination from CSFB. *See* Plevan Decl., Ex. E at 3. Similarly, the Registration Summary indicates "Other" as the reason for plaintiff's termination from Salomon and contains "resign mutual" as the termination comment. *See id.* at 5.

## II. LEGAL STANDARD

Leave of court to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, whether to grant a motion to amend lies within the sound discretion of the trial court. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In *Foman,* the Supreme Court expressly reaffirmed the liberal mandate of Rule 15(a).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court. . . .

*Id.* at 182, 83 S.Ct. 227.

The Second Circuit has stated that " 'considerations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend.' " *Krumme v. WestPoint Stevens Inc.,* 143 F.3d 71, 88 (2d Cir.1998) (quoting *Barrows v. Forest Labs.,* 742 F.2d 54, 58 (2d Cir.1984) (footnote omitted)). Factors relevant to a showing of prejudice include "whether the assertion of new claims would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993). In fact, " '[o]ne of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action.' " *Krumme,* 143 F.3d at 88 (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,* 112 F.R.D. 417, 419 (S.D.N.Y.1986) (collecting cases)). A proposed amendment is especially prejudicial when discovery has been completed and a summary judgment motion has been filed. *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir. 1985).

## III. DISCUSSION

### A. Delay

As explained by the District of Columbia Circuit Court of Appeals:

> A party must make strategic decisions about how to proceed, and can plot its course adequately only if it can anticipate which issues will dispose of the case. Failure to raise an affirmative defense in pleadings deprives the opposing party of precisely the notice that would enable it to

dispute the crucial issues of the case on equal terms.

*Harris v. Secretary, U.S. Dep't of Veterans Affairs,* 126 F.3d 339, 343 (D.C.Cir.1997). With regard to the interplay of delay and prejudice, the Second Circuit has noted the following:

> As a practical matter, however, any delay in asserting an affirmative defense for a significant period of time will almost invariably result in some "prejudice" to the nonmoving party.... [T]he proper standard is one that balances the length of the delay against the resulting prejudice.... *[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.*

*Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 47 (2d Cir.1983) (internal quotation marks and citation omitted, emphasis added). While a court may not deny a proposed amendment solely on the basis of delay, where a significant period of time has passed between the filing of the pleading and the motion to amend, "the burden is upon the party who wished to amend to provide a satisfactory explanation for the delay." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990) ("The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant."). *See also H.L. Hayden,* 112 F.R.D. at 421 ("[A]lthough an unjustified delay in bringing the motion may not be reason in itself for denying it, is should be noted that plaintiffs' delay here was unjustified and serves as an additional factor militating against the motion.").

 Here, defendants filed their Answer on March 13, 2002, and learned of the after-acquired evidence in March 2003. Rather than move to amend at that time, they waited twenty-two months, until the eve of trial, to assert the defense which would, if successful, drastically reduce plaintiff's damages. Although defendants have offered no excuse or justification for the delay, the only possible reason for the timing of the instant motion is that defendants' newly substituted counsel made a strategic decision to assert the defense even though defendants' former counsel knew of the defense and presumably waived it. This, however, is not a sufficient basis for leave to amend where plaintiff is prejudiced by the amendment. *See Ansam Assocs.,* 760 F.2d at 446 (upholding denial of leave to amend complaint where substitute counsel discovered new information forming the basis for the proposed amendment). Furthermore, "leave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading." *Priestley v. American Airlines, Inc.,* No. 89 Civ. 8265, 1991 WL 64459, at *1 (S.D.N.Y. Apr.12, 1991). *See also E.E.O.C. v. Boeing Co.,* 843 F.2d 1213, 1222 (9th Cir.1990) ("Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied.") (internal quotation marks and citation omitted).

## B. Undue Prejudice

In addition to the unexplained delay, plaintiff will be unduly prejudiced by the proposed amendment. Defendants' attempt to trivialize the amount of additional discovery that will be required if the proposed affirmative defense is allowed is disingenuous. To rebut this defense, plaintiff would be entitled to take non-party discovery from both Salomon and CSFB. Plaintiff would then be permitted to offer evidence as to her termination negotiations with these firms. Witnesses to these events may not be available. Even if the knowledgeable witnesses are available, their recollection of events will undoubtedly be diminished compared to two years earlier.

Substantial party discovery would also be required to rebut the defense. Of particular relevance would be information concerning the treatment of other UBS employees who made questionable representations in their employment applications. Questions that would have to be explored include: the nature of the misrepresentations; whether they were blatant lies; were the identified em-

ployees terminated as a result; and were all employees treated in a similar fashion. To answer these questions, plaintiff would need, at the very least, the employment applications, background checks, and other hiring records of all UBS employees whose employment applications were investigated by UBS.

Plaintiff would also have to test the veracity of defendants' assertion that UBS would have terminated Zubulake immediately if it had known then what it learned in March 2003. This inquiry would necessitate another round of depositions of supervisors and Human Resources personnel including, at a minimum, Matthew Chapin, Jeremy Hardisty, Johnn Holland, Brad Orgill, Joshua Varsano and Barbara Amone.

Given the tortured history of the discovery in this action, there is no reason to expect this new wave of discovery to go smoothly. It could well be months or years before this case is finally trial ready if the after-acquired evidence defense is permitted. Plaintiff has waited long enough for her day in court. Defendants' eleventh hour substitution of counsel, with its accompanying shift in defense strategy, cannot be permitted to further delay a case which cries out for final disposition.

## IV. CONCLUSION

Defendants' motion to assert an affirmative defense based on after-acquired evidence is hereby denied because of the unexplained twenty-two month delay in asserting the defense, the undue prejudice it would cause plaintiff in having to re-open discovery which may prove to be stale, and the resulting postponement of the trial date. The Clerk of the Court is directed to close this motion. A conference is scheduled for February 8, 2005, at 4:30 p.m. to discuss the discovery concerns raised by plaintiff in her opposition to the instant motion.

SO ORDERED.