### COMMERCE FUNDING CORPORATION, Plaintiff,

v.

### COMPREHENSIVE HABILITATION SERVICES, INC., Better Medical Services, P.C., Sisters of Charity Medical Center, Barnert Hospital, Saint Vincent's Hospital and Medical Center, Staten Island University Hospital, Inc., Saint Francis Hospital, and Sisters of Charity Hospital, Defendants.

No. 01 Civ. 3796(PKL).

United States District Court, S.D. New York.

Dec. 15, 2005.

357

Robinson Brog Leinwand Greene Genovese & Gluck P.C., Ronald B. Goodman, Erach F. Screwvala, New York, New York, for Plaintiff Commerce Funding Corporation.

Harris Beach PLLC, John W. Clarke, Dean M. Monti, New York, New York, for Defendant Comprehensive Habilitation Services, Inc.

## OPINION AND ORDER

LEISURE, District Judge.

Defendant Comprehensive Habilitation Services, Inc. ("CHS") brings this motion pursuant to Federal Rule of Civil Procedure 59(e) and Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, seeking reconsideration of the Court's July 25, 2005 Order denying defendant's motion for leave to amend its first amended answer. CHS seeks to amend the first amended answer in order to plead five counterclaims against plaintiff Commerce Funding Corpo-

ration ("CFC") which arise out of a failed settlement agreement between CFC and CHS stemming from this underlying action. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

This litigation stems from a factoring agreement that CFC entered into with CHS on or about December 12, 1997 (Def.'s Proposed Second Am. Ans. & Countercls. & Cross-cls. ("Proposed Ans.") ¶ 25) and other related agreements entered into thereafter (Proposed Ans. ¶ 26). Under the factoring agreement, CFC paid CHS a fixed fee for CHS's accounts receivable with various third parties. (July 25, 2005 Order.) After certain obligors of the accounts receivable subject to CFC and CHS's agreement defaulted on their debts, CFC brought the present action in this Court. (Proposed Ans. ¶ 29.)

### I. The Barnert Settlement

Defendant alleges that, in 2001, CHS entered into a settlement agreement with defendant Barnert Hospital ("Barnert") extinguishing a suit brought previously by CHS against Barnert in the District of New Jersey in 1999 for monies owed on services performed by CHS for Barnert. Prior to settlement, CFC contacted Barnert, asserting it was the legal assignee of the accounts receivable owed to CHS and subject to CHS and Barnert's proposed settlement agreement. (Proposed Ans. ¶¶ 31–32.) CHS contested CFC's claim and, as a result, CHS, CFC, Barnert, and CHS's president, Peter Magaro, Ph.D, entered into a settlement agreement that settled CHS's claims against Barnert (the "Barnert Settlement"). (Proposed Ans. ¶¶ 33–34.) The Barnert Settlement stated that, pending the outcome of this underlying action, the proceeds of the settlement of CHS's claims against Barnert would be placed in an escrow account until CHS and CFC told Barnert who—CFC or CSH— the recipient of the funds would be. (Proposed Ans. ¶ 35.) In August 2002, the Internal Revenue Service ("IRS") served a Notice of Levy on Barnert with respect to the monies Barnert owed to CHS. (Proposed Ans. ¶ 36) In September 2002, CFC advised the IRS that CFC held a lien on the proceeds in escrow which it believed were superior to the tax lien claimed by the IRS. (Proposed Ans. ¶ 37.) On or about October 21, 2002, CFC, CHS, and the IRS entered into a stipulation before this court which transferred the proceeds in escrow to a new escrow account overseen by CFC's counsel under the same terms and conditions set forth in the Barnert Settlement, with the additional term that any disbursement of proceeds from the escrow account required seven business days' prior notice to the IRS. (Proposed Ans. ¶ 38.) CHS alleges that, in reliance on CFC's representations, it released the Barnert Settlement funds to CFC on or about October 28, 2002 (Proposed Ans. ¶ 52); CFC gave the IRS proper notice to the IRS the same day (Proposed Ans. ¶ 53); and, in response to a Notice of Levy issued by the IRS to CFC's counsel with respect to monies owed by CHS to CFC, CFC requested that the levy be canceled because it had a superior lien to the federal tax lien (Proposed Ans. ¶¶ 54–55).

### II. The First CHS Settlement

On January 7, 2002, CFC, CHS, defendant Better Medical Services, P.C. ("BMS"), and defendant Saint Vincent's Hospital and Medical Center ("St. Vincent's") stipulated and agreed that all causes of action pending between them [1] would be submitted to arbitration. (July 25, 2005 Order.) CHS alleges that, on October 22, 2002, a written settlement agreement was prepared by CFC, setting forth the settlement terms of those claims open among and between CHS, CFC, and St. Vincent's (the "CHS Settlement"). (Proposed Ans. ¶¶ 39–40.) The CHS Settlement was executed by CFC on November 5, 2002, and by CHS on November 6, 2002. (Proposed Ans. ¶ 41.) Prior to its execution of the CHS Settlement, on November 7, 2002, St. Vincent's informed the other settling parties that the IRS had previously served St. Vincent's with a Notice of Levy on

---

**1.** The pending claims included plaintiff's original claims and cross-claims between the various defendants.

August 6, 2002, which claimed a lien on federal taxes owed by CHS. (Proposed Ans. ¶ 42.) CFC alleges that it then sought to work out the alleged tax liability with the IRS and eventually did, informing CHS and St. Vincent's by telephone messages on December 19, 2002 (Proposed Ans. ¶¶ 44, 46) and by letters confirming the telephone messages on December 27, 2002 (Proposed Ans. ¶ 46).[2]

### III. *The Second CHS Settlement*

CHS alleges that CFC in the meantime had, without notice to CHS, discussed and eventually entered into a settlement agreement on or about December 20, 2002, with St. Vincent's and BMS, but without CHS, under which St. Vincent's paid CFC $1,445,500 (the "Second Settlement"). (Proposed Ans. ¶¶ 48–49, 51.) CHS claims that, notwithstanding this Second Settlement, the CHS Settlement was never terminated, revoked, or withdrawn by CFC. (Proposed Ans. ¶ 50.) On January 20, 2003, CHS demanded that CFC return the $500,000 previously remitted to CFC's counsel as escrow agent in connection with the Barnert Settlement. (Proposed Ans. ¶ 59.) It alleges further that, on January 22, 2003, CFC told CHS that it had retained a total of $520,990 of CHS's funds, in addition to the money received under the Second Settlement. (Proposed Ans. ¶ 60.) With respect to the Second Settlement, CHS alleges that CFC obtained it by fraudulently conspiring with St. Vincent's to sell to St. Vincent's its purported interest in the accounts payable owed by St. Vincent's to CHS. (Proposed Ans. ¶ 61.) It claims that CFC knew that the accounts payable were merely security for amounts CFC had loaned to CHS that were returnable when CFC received all monies owed to it under the factoring agreement, and that the arbitration panel, subsequent to the Second Settlement, had found that the loans were clearly settled and compromised and, as such, CFC had received all monies to which it was entitled. (Proposed Ans. ¶¶ 62–64.)

### IV. *CHS's Request to the Arbitrators*

CFC contacted the Court on January 1, 2003, stating that it was "withdrawing [its] claim against Comprehensive Habilitation Services, Inc., St. Francis Medical Center and Staten Island University Hospital." (Letter from Ronald B. Goodman, Esq., to the Court, dated January 3, 2003.) CHS's counsel, John W. Clarke, Esq., responded to CFC's letter on January 16, 2003, requesting a hearing to address CFC's request to withdraw. On January 24, 2003, the Court told CHS to refer its concerns to the arbitrators and, if the arbitrators could not resolve them, then schedule a date with the Court for a hearing. Mr. Clarke, in a letter dated January 27, 2003, requested that the arbitrators arrange a call in order to schedule submission and hearing of the new issues. (July 25, 2005 Order.) CHS alleges that the arbitrators declined to accept these new issues, but it has not informed the Court as to *when* the arbitrators declined to hear them. (Clarke Reply Aff. Def.'s Mot. Amend Am. Ans. & Cross-cls. Assert Countercls. ¶ 8.) On March 16, 2005, CHS filed its motion for leave to amend the first amended answer.

### V. *The Court's July 25, 2005 Order*

The Court denied CHS's motion in its July 25, 2005 Order, finding as a preliminary matter that while the parties agreed that CFC had entered into a settlement agreement with BMS and St. Vincent's on or around December 20, 2002, CFC's action had never been properly dismissed pursuant to Federal Rule of Civil Procedure 41(a), either through a stipulation of dismissal signed by all parties, *see* Fed.R.Civ.P. 41(a)(1), or by court order, *see* Fed.R.Civ.P. 41(a)(2). Establishing that CFC remained as the plaintiff in the action, the Court held that the counterclaims were not subject to disposition by the concurrent arbitration. (July 25, 2005 Order.) The Court still denied CHS's motion on the grounds that, pursuant to Federal Rule of Civil Procedure 16(b), CHS had failed to demonstrate good cause warranting a modification of its original scheduling order. (July 25, 2005 Order.) The Court held that CHS

---

2. The proposed second amended answer mistakenly states that the letter was dated December 27, 2004, rather than December 27, 2002. (Proposed Ans. ¶ 46.)

failed to explain adequately its almost twenty-five-month delay in bringing its motion. Further, if the motion were granted, CFC would be unduly prejudiced because CFC would have to undertake an additional round of discovery after CFC had previously settled with, or discontinued its action against, all defendants except CHS, and after all cross-claims had been resolved. (July 25, 2005 Order.)

## DISCUSSION

### I. Motion for Reconsideration Standards

Federal Rule of Civil Procedure 59(e) and Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York permit a party to move for reconsideration of an order resulting in a judgment within ten days of entry of the judgment. Fed.R.Civ.P. 59(e); S.D. & E.D. N.Y. R. 6.3. District courts in the Second Circuit have held that "[s]uch motions are narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 391–92 (S.D.N.Y.2000) (Sprizzo, J.) (citing *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996)); *see also Anglo Am. Ins. Group, P.L.C. et al. v. CalFed Inc.*, 940 F.Supp. 554, 557 (S.D.N.Y.1996) (holding that a motion for reconsideration "is to be narrowly construed and strictly applied to avoid repetitive arguments on issues that have been considered fully by the court").

■ Because the reviewing standard is strict, motions for reconsideration are usually denied unless the movant offers controlling decisions or facts that the court had originally overlooked, and which the movant could reasonably believe would have altered the court's original decision. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990) (Leisure, J.)); *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir.2003) (citing *Shrader* and affirming a denial of a motion for reconsideration where petitioners failed to present "neither factual matters nor

controlling precedent it had overlooked that would have changed its decision"); *see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'—and we in no way depart from that basic principle.").

■ The controlling decisions or factual matters presented by a litigant for reconsideration must have been put before the court in the underlying motion. *Range Road Music*, 90 F.Supp.2d at 392 (Sprizzo, J.) (citing *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307, 2000 WL 217480, at *1 (S.D.N.Y. Feb. 22, 2000) (Keenan, J.)); *Davis v. The Gap. Inc.*, 186 F.R.D. 322, 324 (S.D.N.Y.1999) ("[A] party in its motion for reargument 'may not advance new facts, issues or arguments not previously presented to the court.'" (citing *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, No. 86 Civ. 6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989))). Clearly, a motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue. *Davis*, 186 F.R.D. at 324 ("[T]he court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment."); *Carolco Pictures Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y.1988) (denying a motion for reargument where movant cited in its motion papers *for the first time* two cases supporting its arguments).

### II. Leave to Amend Standards

■ Federal Rule of Civil Procedure 15(a) allows a party to amend a pleading once as a matter of course within certain time limits, by written consent of its adversary, or by leave of a district court "when justice so requires." Fed.R.Civ.P. 15(a); *Rachman Bag Co. v. Liberty Mutual Ins. Co.*, 46 F.3d 230, 234 (2d Cir.1995). Relatedly, Rule 13(f) allows a party to assert a counterclaim by amendment where the pleader had failed to do so originally because of "oversight, inadvertence, or excusable neglect, or when justice requires." Fed.R.Civ.P. 13(f). When a

party seeks leave to amend its answer to assert a counterclaim, as the Court has been asked to do here, Rules 13(f) and 15(a) must be read together. *The Bank of New York v. Sasson*, 786 F.Supp. 349, 352 (S.D.N.Y.1992).

■■■ The Supreme Court has stated that leave to amend a pleading "should normally be permitted" and any refusal without justification "is 'inconsistent with the spirit of the Federal Rules.'" *Rachman Bag Co.*, 46 F.3d at 234 (Walker J.) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46 (2d Cir.1983) (citing *Foman*, 371 U.S. at 178, 83 S.Ct. 227). However, a district court is permitted to deny leave to amend a pleading on a number of grounds, including where the movant has exercised undue delay in bringing its motion, where movant has evinced bad faith or a dilatory motive, where undue prejudice would result to the non-movant, and where "repeated failure[s] to cure deficiencies by amendments [were] previously allowed." *Rachman Bag Co.*, 46 F.3d at 234 (citing *Foman*, 371 U.S. at 182, 83 S.Ct. 227). Delay alone, absent an additional basis for denial, however, does not usually warrant denying a request for leave to amend. *Id.* at 234–35 (citing *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)). This Court's decision to grant or deny a motion for leave to amend is reviewed by the Second Circuit for an abuse of discretion. *Evans*, 704 F.2d at 47 (citation omitted).

III. *Motion for Reconsideration and Leave to Amend Standards as Applied to Defendant's Contentions*

CHS argues that the following four reasons warrant granting the instant motion in CHS's favor: (1) the Court mistakenly believed that CHS's delay in bringing the motion for leave to amend was significantly longer than it actually was; (2) granting the instant motion would promote judicial efficiency; (3) "the interests of justice" require granting the motion in CHS's favor; and (4) the Court assumed incorrectly in its July 25, 2005 Order that granting CHS's motion would prejudice CFC. CHS does not contend that the Court overlooked any controlling legal authority in deciding the motion for leave to amend. Instead, CHS's bases for reconsideration are factual matters. Those bases for reconsideration are addressed *in seriatim*.

A. *Length of Delay*

■■■ CHS contends that the Court should reconsider its July 25, 2005 Order because the Court mistakenly believes that CHS could have sought leave to amend as of December 20, 2002, when in actuality it could only have sought leave to amend as of February 13, 2004, when the arbitrators declined to decide CHS's claims and the need to move this Court arose.[3] While the Court does not find merit in CHS's explanation of its delay in moving the Court between that date and March 16, 2005 when it filed its notice of motion, such a finding need not even be made because CHS failed to bring this factual matter to the Court's attention when it brought its motion for leave to amend. As stated above, a movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered. *See Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 392 (S.D.N.Y.2000) (Sprizzo, J.) (citing *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307, 2000 WL 217480, at *1 (S.D.N.Y. Feb. 22, 2000) (Keenan, J.)).

B. *Promotion of Judicial Efficiency*

■■■ CHS submits that granting its motion for leave to amend would promote judi-

---

**3.** CHS stated in its reply affidavit in support of its original motion for leave to amend that "the arbitrators declined to accept the new issues between the parties"; however, CHS did not state when this occurred. (Clarke Aff. Supp. Def.'s Mot. Amend Am. Ans. & Cross-cls. Assert Countercls. ¶ 5.) In its memorandum in support of this motion, CHS avers that the arbitrators' decision was presented to the Court on April 19, 2004 in connection with an application for the entry of judgment against another co-defendant. (Def.'s Memo. Supp. Mot. Amend Def.'s Am. Ans. Assert Countercls. 5 n. 2.) The Court is not aware of what form the decision was presented to the Court—*i.e.*, whether written or oral—but the issue is moot because CHS was required to have presented that factual matter in its original motion papers.

cial efficiency because, if denied, CHS would commence a new action against CFC asserting the claims embodied in the proposed counterclaims. (Def.'s Memo. 4.) Judicial resources would be wasted because a new judge would have to be brought up to speed on the factual and procedural history that this Court is already aware of. (Def.'s Memo. 4.) Since filing this motion, CHS has in fact initiated an action in the Southern District of New York which has been assigned to this Court. (Compl., Nov. 15, 2005.) Consequently, CHS's argument fails as resources will not be "expended needlessly" due to a new court's handling of this matter. More importantly, this argument fails because, while the Court did not address this argument in its July 25, 2005 Order, it would not have affected the Court's decision-making process. The argument relies on the premise that this Court's intimate knowledge of "the facts, ... parties and the prior proceedings" of this action (Def.'s Memo. 4) makes it the best suited to decide this matter; however, such heightened knowledge does not extend to that of the circumstances giving rise to the proposed counterclaims. The Court's knowledge of the settlement discussions that took place after claims were removed from this Court and submitted to arbitration is limited to what has been set forth in the party's moving papers. This Court does not maintain the skepticism that movant does regarding our sister courts' ability to review efficiently and promptly the party's papers and proceed in an expeditious manner.

### C. *The Interests of Justice*

■ CHS next argues that the interests of justice compel the Court to permit CHS to amend its first amended answer, otherwise "mendacious litigants" such as CFC would be encouraged to essentially swindle other parties as CHS alleges has been done here. (Def.'s Memo. 5.) This argument flies in the face of CHS's concession that, if the motion is denied, CHS will assert the proposed counterclaims as affirmative claims in a separate action. Clearly, the interests of justice will be served as CHS, in either scenario, will

have its day in court. Consequently, while this was not articulated in the July 25, 2005 Order, it would not have altered the Court's determination and therefore it does not serve as an adequate ground for reconsideration.

### D. *Prejudice to CFC*

CHS states in its supporting memorandum that the Court previously overlooked its contention that CFC will not suffer any prejudice if CHS is allowed to amend the first amended answer to assert its counterclaims. (Memo. Supp. Def.'s Mot. Reconsideration Mot. Amend Def.'s Am. Ans. & Cross-cls. Assert Countercls. ("Def.'s Memo.") 3.) In support of this contention, CHS has offered the Court the three considerations weighed by the Second Circuit when determining what constitutes prejudice in the context of a Rule 15(a) motion: (1) whether the new claim would force plaintiff to expend additional resources in conducting discovery and preparing for trial; (2) whether the new claim would delay the underlying dispute's resolution; or (3) whether the plaintiff would be prevented from bringing a timely action in another jurisdiction. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted).

■ CHS first argues that CFC will have to expend resources and undertake discovery regardless of whether this motion is granted, because if it is denied CHS will simply file a new action asserting the proposed counterclaims as affirmative causes of action. While the Court did not address this argument in its July 25, 2005 Order, it would not have altered its decision, *see Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990) (Leisure, J.)), because prejudice was found under the next *Block* factor.

■ Second, CHS argues that the proposed counterclaims would not delay resolution of any other claims. (Def.'s Memo. 4.) CHS never advanced this argument on its underlying motion.[4] Because "a party in its

---

4. CHS stated in its memorandum in support of its underlying motion that "the claims and cross-

claims in this action are being resolved piecemeal" (Reply Memo. Supp. Def.'s Mot. Amend

motion for reargument 'may not advance new facts, issues or arguments not previously presented to the court,'" *Davis v. The Gap, Inc.*, 186 F.R.D. 322, 324 (S.D.N.Y.1999) (citing *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, No. 86 Civ. 6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989)), the Court will not consider this argument for the first time here. Even if the Court had to consider this argument, it would fail. The proposed counterclaims would not delay resolution of any other claims because, as the Court held in the July 25, 2005 Order, *all other claims have been resolved:* "CFC has settled with or discontinued the action against all defendants except CHS, ... all cross-claims have been settled, and ... CFC is of the belief that the action had been dismissed completely." (July 25, 2005 Order.) The pertinent question under Rule 15(a) standards is not whether other claims will be delayed, but whether the amendment would "'significantly delay the resolution of the *dispute.*'" *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F.Supp.2d 134, 151 (S.D.N.Y.2003) (emphasis added) (quoting *Block*, 988 F.2d at 350). Clearly, this litigation, which otherwise would be closed, would be significantly delayed by allowing CHS to assert its counterclaims and thereby necessitate CFC's answer, further motion practice, and, eventually, trial.

 Third, CHS urges the Court to consider that its "delay in moving to amend CHS's answer has not prevented CFC from bringing a timely action in another jurisdiction." (Def.'s Memo. 4.) As CHS notes (Def.'s Memo. 4), the consideration of whether delay prevented CFC from bringing a timely action in another jurisdiction is inapposite here, as this is not a case where a defendant is raising in an untimely manner a statute of limitations defense, which, if raised earlier, would have allowed the plaintiff to reassert its action in a non-time-barred jurisdiction. (Def.'s Memo. 4.) Again, though, this argument was not raised on the underlying motion, and cannot, therefore, be consid-

ered anew on this motion. *Davis,* 186 F.R.D. at 324 (citation omitted).

Having considered the foregoing arguments, the Court finds that the instant motion is essentially one of reargument, and not reconsideration, *see Tufo's Wholesale Dairy, Inc. v. CNA Fin. Corp.*, No. 03 Civ. 10175, 2005 WL 3311997, at *4 (S.D.N.Y. Dec. 5, 2005) (Keenan, J.) (denying a motion for reconsideration where movant sought "to relitigate issues already decided in this Court's March 2005 Decision and Order denying summary judgment"), and remains satisfied that its denial of CHS's motion for leave to amend its first amended answer to assert counterclaims was proper based on CHS's delays and the prejudice that would result to CFC.

## CONCLUSION

For the aforementioned reasons, defendant CHS's motion for reconsideration of the Court's denial of CHS's prior motion for leave to amend its first amended answer to assert counterclaims against plaintiff CFC is denied. Because there are no active claims pending, this case is dismissed, and the clerk is ordered to close the case.

**SO ORDERED.**

---

Def.'s Am. Ans. Assert Countercls. ("Def.'s Reply Memo.") 6.) and thus the parties could "try the proposed counterclaims independent of CHS's remaining cross-claim against Slaten," (Def.'s Reply Memo. 6) which cross-claim has since been decided by jury trial. (June 16, 2005 J.)

The Court finds that this statement—the only one of which that remotely touches upon the issue of the other claims from the underlying action— could not be reasonably construed as an argument that the proposed counterclaims would not delay the resolution of any other claims.