**In re ENRON CORP., et al., Reorganized Debtors.**

**Houston Pipeline Company LP, HPL Resources Company LP, and AEP Energy Services Gas Holding Company, Plaintiffs,**

**v.**

**Enron Corp., ENA Asset Holdings, L.P. and BAM Lease Company, Defendants.**

Bankruptcy No. 01–16045 (AJG).
Adversary Pro. No. 03–93372.

United States Bankruptcy Court, S.D. New York.

March 27, 2007.

Hogan & Hartson LLP (David Dunn, Esq., Frank T. Spano, Esq., Toby M. Smith, Esq., Ed Dolan, Esq., of Counsel), New York, NY, Attorneys for Plaintiffs.

Weil, Gotshal & Manges LLP (Peter Gruenberger, Esq., Martin A. Sosland, Esq., Vance L. Beagles, Esq., of Counsel), New York, NY, Attorneys for Defendants.

## OPINION DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### INTRODUCTION

The Plaintiffs move for leave to amend their Second Amended Adversary Complaint ("SAAC") and file a proposed Third Amended Adversary Complaint and to take additional discovery. The proposed Third Amended Adversary Complaint does not assert additional claims but contains additional factual allegations concerning the claims that currently exist in the SAAC. Although more fully set forth below, the underlying proceeding can be briefly summarized as follows: the Plaintiffs entered into a Right to Use Agree-

ment to use underground natural gas owned by Enron Corp. ("Enron") and its affiliates. Subsequently Enron, after entering bankruptcy, sought to reject that Right to Use Agreement.

### I. BACKGROUND

#### A. Factual Background[1]

In 1997, plaintiffs Houston Pipe Line Company LP ("HPL") and HPL Resources Company LP ("HPLR"), then wholly owned by Enron, entered into an agreement to sell to the Bammel Gas Trust ("BGT")[2] approximately 80 billion cubic feet ("BcF") of recoverable natural gas stored (the "Storage Gas") in the Bammel Storage Reservoir. (SAAC, ¶ 16.) Enron's purpose was to "monetize" a certain portion of the gas. (SAAC, ¶¶ 9, 16–17.) The Court will, like the Plaintiffs do, refer to this monetization as the "Bammel Gas Financing." (SAAC, ¶ 17.) BGT simultaneously purported to lease the "Storage Gas" back to HPL and HPLR by means of a Pressurization and Storage Gas Borrowing Agreement (the "Pressurization Agreement"). (SAAC, ¶ 17.) The Pressurization Agreement gave HPL the right to use the Storage Gas in exchange for paying pressurization fees to BGT. BGT had purchased the natural gas using a $230 million loan provided by a lending group headed by Bank of America ("BofA"). (SAAC, ¶ 17.)

#### B. The May 2001 Acquisition of HPL and HPLR by AEPGH

In May 2001, plaintiff AEP Energy Services Gas Holding Company ("AEPGH") (collectively with HPL and HPRL, the "Plaintiffs") acquired all of HPL's stock and HPLR from Enron. (SAAC, ¶ 7.) In connection with that transaction, AEPGH

---

**1.** Only those facts most relevant to the Motion to Amend will be set forth in this opinion.

**2.** The Bank of America and Enron created BGT.

acquired the right to use the Bammel Storage Assets,[3] including the Storage Gas, for a 30–year period with a 20–year renewal option. (SAAC, ¶ 8.) The Plaintiffs' exclusive right to use of the Bammel Storage Assets is "the primary focus of this adversary complaint." (SAAC, ¶ 8.) Enron utilized two single purpose entities to carry out this transaction, defendants ENA Asset Holdings, L.P. ("ENA") and BAM Lease Company ("BAMCO") (collectively, with Enron, the "Defendants"). (SAAC, ¶ 22.) As part of this transaction in May 2001, HPL, while still an affiliate of Enron, assigned all of its rights and obligations under a 1999 lease for the Bammel Storage Pipelines between HPL and ENA to BAMCO and transferred to BAMCO approximately 10.5 BcF of gas stored in the Bammel Storage Reservoir pursuant to the Assignment and Assumption Agreement, dated May 31, 2001 (the "2001 Assignment and Assumption Agreement"). (SAAC, ¶¶ 19, 21, 24.) Concurrently, BAMCO purported to sublease back to HPL certain of its rights and interests to the Bammel Storage Assets. (SAAC, ¶ 25.) BAMCO assumed the obligations of HPL and HPLR in connection with the Bammel Gas Financing related agreements, including the Pressurization Agreement. (SAAC, ¶ 29.) BAMCO agreed to make the pressurization and borrowing fees payments to BGT and BAMCO granted to HPL the right to use the 55 BcF that BAMCO was leasing from BGT. As a result of Enron's representations to AEPGH that it could not purchase the Cushion Gas outright, HPL and BAMCO entered into a long-term Right to Use Agreement, effective on May 31, 2001. (Memo. in Support of Mot. to Amend, at 2, 5.) Under the Right to Use Agreement, HPL acquired exclusive rights to the use of 65.5 BcF of Cushion Gas located in the Bammel Storage Reservoir. (SAAC, ¶ 29.) The Cushion Gas is needed to maintain adequate pressure in the Bammel Storage Reservoir to allow HPL to withdraw its working gas. (SAAC, ¶ 29.) At the same time as these related agreements, Bank of America amended its security agreement to reflect that it continued to hold a security interest in 55 BcF of the natural gas in the Bammel Storage Reservoir (See SAAC, ¶ 17), and Am. and Restated Sec. Agreement between The Bank of New York as Tr. of the Bammel Gas Trust and Bank of America, dated May 31, 2001, § 3(a) (Declaration of Vance Beagles in Supp. of Reorganized Debtors' Response Memo. of Law in Opposition to Plaintiffs' Mot. for Leave to File Third Amended Adversary Complaint and for Leave to Take Add'l Discovery ("Beagles Decl."), Dkt. 133, Ex. 7.)

### C. Subsequent Events after the Debtors Filed for Bankruptcy

On December 2, 2001, the Reorganized Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

Bank of America, as Administrative Agent and as a representative of BGT's Trustee, filed an action against HPL in Texas state court in July 2002, arguing that because of HPL's contractual acknowledgements, HPL was estopped from denying that BGT is the owner of the

---

**3.** Bammel Storage Assets refer to the Bammel Storage Reservoir, the Bammel Pipelines and the "Cushion Gas." (SAAC, ¶ 7.) Bammel Storage Reservoir refers to a 7,000–acre underground natural gas storage reservoir located in Harris County, Texas. *Id.* Bammel Pipelines refers to "appurtenant gas pipelines known as the Bammel Loop, Houston Loop, and Texas City Loop." *Id.* Cushion Gas refers to gas "intended as a permanent inventory in a storage reservoir to maintain adequate pressure and deliverability rates throughout the withdrawal season." (*Id.* at n. 1.)

Bammel natural gas (Beagles Decl. Exs. 8, 9.) The Texas state court granted summary judgment against HPL in December 2003 (the "Harris County Judgment"), holding that HPL was estopped from denying BGT is the owner of the Storage Gas. (See Corrected Final J., Cause No.2002–36488, Harris Cty. (Beagles Decl., Ex. 10.))

AEPGH, HPL, and HPLR commenced this adversary proceeding on November 21, 2003, to obtain a declaratory judgment that the Right to Use Agreement is not subject to rejection under Section 365 of the Bankruptcy Code. On January 29, 2004, the Plaintiffs filed their First Amended Complaint. On February 23, 2004, the Debtors filed Rejection Notices, seeking to reject the Right to Use Agreement and the Pressurization Agreement. (SAAC, ¶ 37.) On March 8, 2004, the Plaintiffs filed their objection and response to the Rejection Notices. (SAAC, ¶ 37.)

In September 2004, the Defendants and Plaintiffs reached an agreement (the "2004 Settlement Agreement") settling a number of claims in connection with the Bammel Storage Assets. In the 2004 Settlement Agreement, the Plaintiffs agreed to file an amended complaint to narrow the claims to those relating to the Right to Use Agreement. (2004 Settlement Agreement, § 10.3 (Beagles Decl., Ex. 11).)

On November 28, 2004, the Plaintiffs filed the SAAC. The SAAC alleges that Enron should not be permitted to reject the Right to Use Agreement because (i) the Right to Use Agreement is not an executory agreement or lease pursuant to Section 365 of the Bankruptcy Code (Count I), even if the Right to Use Agreement is not an executory agreement or lease, it is a sale for a term of years or equivalent of a fee simple determinable and thus not susceptible to rejection pursuant to Section 365 of the Bankruptcy Code (Count II), even if the Right to Use Agreement is subject to rejection, HPL has rights under Section 365(b)(1)(A)(iii) of the Bankruptcy Code and various agreements between the parties to remain in possession of the Cushion Gas because it is real property (Count III), and that equity demands that Enron cannot reject the Right To Use Agreement because this would negate the assignment of rights and interests transferred to the Plaintiffs and would result in a windfall for Enron (Count IV).

### D. The Motion to Amend

The proposed new amendments to the amended complaint (the "Proposed Amendments") were previously barred by the Harris County Judgment that estopped HPL from denying that BGT's Trustee is the owner of Storage Gas and that any rights of HPL to use the Storage Gas under or based on the Right To Use Agreement is subject to the Trustee's ownership rights. On August 24, 2006, the Texas Court of Appeals vacated and dismissed the district court's judgment, holding that the Harris County Judgment violated the automatic bankruptcy stay and was thus void. See Houston Pipeline Co. LP v. Bank of America, N.A., 213 S.W.3d 418, 421–23 (Tex. App.-Hous. [1st Dist.] Aug. 24, 2006).

The Plaintiffs now wish to add new factual allegations purported to be relevant to Counts I, II, and IV of the SAAC "that the 1997 Bammel Gas Financing was mere window dressing for an unsecured loan to Enron" and "did not involve a true sale of gas to BGT." (Memo. in Support of Mot. to Amend, at 3.) In essence, the Plaintiffs claim that BGT does not and did not own the Cushion Gas and that BAMCO consequently never acquired any interest to that gas and does not have any executory performance obligations in regard to the

Right to Use Agreement. Furthermore, the Plaintiffs allege that Enron's inequitable conduct of misrepresenting the true nature of the Bammel Gas Financing should be considered under Count IV.

## II. DISCUSSION

### A. Legal Standards for Motions for Leave to Amend

 Rule 15(a) states that leave to amend a pleading "shall be given freely when justice so requires." FED.R.CIV.P. 15(a). In *Foman v. Davis*, the Supreme Court interpreted Rule 15 to permit such amendments unless (1) the party has unduly delayed seeking to amend, (2) the party seeking to amend is acting with a dilatory motive, (3) the proposed amendment would cause undue prejudice to the opposing party, or (4) the proposed amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F.Supp.2d 321, 326 (S.D.N.Y.2001) (same); *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 362 (S.D.N.Y.2005) ("a district court is permitted to deny leave to amend a pleading on a number of grounds, including" where there is undue delay in bringing the motion, bad faith or a dilatory motive, or undue prejudice would result to the nonmovant). The Second Circuit has considered "undue delay, bad faith, and prejudice to the opposing party [to be] touchstones of a district court's discretionary authority to deny leave to amend." *See Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.1998). The Second Circuit has called prejudice "perhaps most important." *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987) (holding that a Rule 15 motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party"). The defendants here oppose the Plaintiffs' motion for leave to amend for three of the four reasons articulated in *Foman*. The district court has discretion whether to allow a party to amend its complaint. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227 ("the grant or denial of an opportunity to amend is within the sound discretion of the District Court"); *see also Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir.1995) (the "decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court").

The Court holds that the motion to amend should be denied for two of the reasons articulated in *Foman*—prejudice and futility. Each reason by itself would justify the Court in denying leave to amend, however, the Court will address all of the Defendants' arguments opposing the motion to amend for the sake of completeness.

### B. Dilatory Motive

 Under the Supreme Court precedent in *Foman*, "a party's dilatory motive is a legitimate basis for a court's denying that party's motion to amend a pleading." *Am. Med. Assoc. v. United Healthcare Corp.*, No. 00 Civ. 2800(LMM), 2006 WL 3833440, at *5 (S.D.N.Y. Dec.29, 2006) (citing *Foman*, 371 U.S. at 182, 83 S.Ct. 227). "When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims, the court is free to deny leave to amend." *See PI, Inc. v. Quality Prods., Inc.*, 907 F.Supp. 752, 764 (S.D.N.Y.1995).

 The Defendants contend that the Plaintiffs asked for leave to amend "on the eve" of the Defendants filing for summary judgment, and that the motion to amend should be denied because the Proposed

Amendments are sought for delay. The Defendants argue that the real reason for the motion to amend is that the Defendants notified the Court and the Plaintiffs that they intended to move for summary judgment. Although the Plaintiffs' timing here could be construed as dilatory, the timing is not as damaging as it was in *PI, Inc.* There, the plaintiff moved to amend its complaint following oral argument on the defendants' motion to dismiss. *PI, Inc.*, 907 F.Supp. at 765. That was also the "second time that the plaintiff has used the tactic of waiting for the defendants to file motions to dismiss before moving to amend its complaint." *Id.* Here, in contrast, there is not "clearly a dilatory tactic," *id.*, because a motion for summary judgment cannot be unexpected—the Defendants requested a pre-motion conference to discuss such a filing in May 2006. (See Jan. 25, 2007 Tr., Dkt. 126, at 35.) Also, as the Plaintiffs point out, mediation efforts ceased in December 2006 and the Plaintiffs requested leave to amend in January 2007. It could just as likely be the cessation of mediation in combination with the Harris County Judgment being dismissed rather than "anticipation of an adverse ruling" that spurred the Plaintiffs into moving to amend their complaint. The Defendants have not established the Plaintiffs' dilatory motive as a basis for denying the motion to amend.

### C. Undue Prejudice

 In determining what constitutes "prejudice," courts "generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Monahan v. New York City Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir.

2000) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993)). "One of the most important considerations in determining whether an amendment would be prejudicial is the degree to which it would delay the final disposition of the action." *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.1998). A proposed amendment is especially prejudicial when discovery has already been completed and the non-movant has already filed a motion for summary judgment. *See id.; see also Priestley v. Am. Airlines, Inc.*, 89 Civ. 8265, 1991 WL 64459, at *2 (S.D.N.Y. Apr.12, 1991) ("Undue prejudice warrants denial of leave to amend where the proposed claim will significantly increase the scope of discovery when the case is ready for trial."). Although an amendment to a complaint will obviously "subject defendant to some additional burden, courts have held that such a burden does not constitute impermissible prejudice." *Tomlinson v. St. Paul Reins. Mgmt. Corp.*, No. 96 Civ. 4760(JFK), 1998 WL 65996, at *4 (S.D.N.Y. Feb.17, 1998); *see also Sommer v. PMEC Assocs.*, No. 88 Civ. 2537, 1993 WL 361660, at *4 (S.D.N.Y. Sept.14, 1993) ("courts have consistently held that such burden does not constitute impermissible prejudice").

 The Defendants contend, and the Court agrees, that the Proposed Amendments should be denied because of their prejudicial effects. The Defendants argue that the Proposed Amendments would dramatically expand the scope of discovery, would delay resolution of this case, and would burden Enron with the responsibility of educating "one of the few remaining Enron employees (none of whom were personally involved in the [1997] Transaction) to provide testimony" on the topics of the Proposed Amendments.

The present situation is comparable to that in *Zubulake v. UBS Warburg LLC,* 231 F.R.D. 159 (S.D.N.Y.2005). There, the court denied the defendants' motion to amend its answer to include an additional affirmative defense. *Id.* The court held that the plaintiff would be unduly prejudiced if the court allowed the proposed amendment by the amount of additional discovery that would be required. *Id.* at 162–63. The court also cited several circumstances present here, namely that more discovery would be necessary from non-parties and knowledgeable witnesses are not readily available. *Id. See also Smith v. City of New York,* 611 F.Supp. 1080, 1093 (S.D.N.Y.1985) (the additional discovery and preparation required by the proposed amendment justified denial of motion to amend). Given the amount of discovery that has been completed here (see Jan. 25. Transcript, at 35–36), and that a summary judgment motion will shortly be filed, the Proposed Amendments, futile as they are (discussed below), would be especially prejudicial. *Cf. Ansam Assocs. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir.1985) (motion to amend denied where the proposed claims alleged "an entirely new set of operative facts of which it cannot be said that the original complaint provided fair notice" and because of prejudice "given the fact that discovery had already been completed and [the non-moving party] had already filed a motion for summary judgment").

The Plaintiffs claim that Enron cannot claim any prejudice from having to respond to the Proposed Amendments because Enron "has been on notice of the substance of these allegations since at least 2003." This overlooks several points—(1) the main factors cited above under *Block* show that notice is not a major consideration under prejudice, (2) Enron has produced extensive discovery in response to the SAAC, and (3) Enron

sought to whittle down the "live" issues to the Right to Use Agreement by way of the 2004 Settlement Agreement. More importantly, the Plaintiffs would not fare well in a "notice" argument even if it were a major factor under prejudice. One, the Defendants point out that the Plaintiffs had thorough knowledge of the 1997 Bammel Gas Financing when they entered into the Right to Use Agreement in 2001. Second, the Plaintiffs commenced this adversary proceeding in November 2003. At that point in time, (1) they were obviously aware of the substance of the proposed new allegations concerning 1997 Bammel Gas Financing, and (2) the Harris County Judgment, which would estop them from asserting that the Bammel Gas Financing did not involve a true sale of gas to BGT, has not been entered yet. Although Plaintiffs' counsel argues that this chronology is not particularly relevant, because that judgment—until it was vacated—would have stalled their sham transaction claims, that argument overlooks what else has transpired since then. Most likely, the parties would have been able to address those claims in the 2004 Settlement Agreement if the Plaintiffs had raised the point that they were appealing the Harris County Judgment and that they reserved the right to reinstate the claims that were barred from the original complaint. In sum, the Plaintiffs cannot argue that the Defendants would not be prejudiced by allowing another amended complaint because the Defendants were on notice of the substance of the Proposed Amendments while ignoring all that the Plaintiffs were on notice of when they entered into the 2001 transactions and when they filed their original complaint.

The Defendants have established undue prejudice as a reason that justifies the Court to deny the motion to amend.

### D. Futility of Proposed Amendment

A "good reason to deny leave to amend is when such leave would be futile." *See Acito*, 47 F.3d at 55; *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (leave to amend may be denied when the proposed amendment are "unlikely to be productive"). "[I]f the proposed amendment would be subject to 'immediate dismissal' for failure to state a claim or on some other ground, the Court will not permit the amendment." *See A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F.Supp.2d 281, 298 (S.D.N.Y.2000) (citation omitted); *see also Chan v. Reno*, 916 F.Supp. 1289, 1302 (S.D.N.Y.1996) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis."). Mirroring the presumption granted to the plaintiff in a 12(b)(6) motion, if the movant has at least colorable grounds for relief, justice requires that its motion to be amend be granted. *See Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir.1984); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F.Supp.2d 364, 410 (S.D.N.Y.2006) (in assessing whether proposed amended claims are futile, the court is required to adopt the same analysis as that applied on a motion to dismiss for failure to state a claim under Rule 12(b)(6) and thus must treat the facts alleged by plaintiff as true, and view them in the light most favorable to him).

The Defendants contend the Proposed Amendments are futile for multiple, independent reasons. In short, those reasons are (1) under principles of contractual estoppel, (a) the Plaintiffs are contractually estopped to claim that HPL did not sell the natural gas to BGT, and (b) the parties' 2004 Settlement Agreement estops the Plaintiffs' Proposed Amendments, (2) the Plaintiffs are collaterally estopped, due to a recent "finding" in a related case in the Southern District of New York, from claiming that the 1997 transaction was a sham, and (3) the factual allegations in the Proposed Amendments have no bearing on the declaratory judgment claims and are thus superfluous.

### 1. The Proposed Amendments are Barred by Contractual Estoppel

The Defendants make two arguments under contractual estoppel. One, the Defendants claim that another amended complaint would violate the settlement because the Plaintiffs had agreed to file "a single amended complaint." (Debtors' Response Memo. at 11.) In other words, the Defendants interpret the use of the singular articles "an" and "the" before "amendment" in the 2004 Settlement Agreement to bar multiple amendments. The Defendants also claim that under the 2004 Settlement Agreement the Plaintiffs agreed to release all claims "relating to HPL's 1997 sale of" gas to BGT, waived their ability to file fraud claims, and agreed to narrow the claims strictly related to the Right To Use Agreement.

The Defendants' single article interpretation does not withstand scrutiny. The 2004 Settlement Agreement did not expressly limit the Plaintiffs from filing only one amendment. Also, courts generally do not strictly construe articles such as "an" or "the" without more evidence of intent. *See Georgetown Univ. Hosp. v. Sullivan*, 934 F.2d 1280, 1283–84 (D.C.Cir. 1991). *See also In re Spradlin*, 231 B.R. 254, 257 (Bankr.E.D.Mich.1999) (discussing ambiguities in most articles and stating their precise meaning generally depends on context); *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed.Cir. 2000) (in patent cases "the general rule" is that "the article 'a' receives a singular

interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article").

The Court agrees that the 2004 Settlement Agreement estops the Plaintiffs from adding factual allegations concerning the 1997 Bammel Gas Financing to argue that the Right to Use Agreement should not be rejected. As the Plaintiffs note, the 2004 Settlement Agreement expressly reserved AEPGH's right to litigate the rejection of the Right to Use Agreement. (*See* 2004 Settlement Agreement, § 3.5.) However, it is a strain to say that the 1997 Bammel Gas Financing was not precluded by the 2004 Settlement Agreement, which limited the Plaintiffs' future actions to the Right To Use Agreement. The text of Section 4.2 of the 2004 Settlement Agreement reads that AEPGH releases Enron from "any and all ... causes of action, rights or damages ... relating or attributable to, or arising out of or in connection with, (i) the Bammel Agreements." There are some exceptions in this broad language listed for the Right to Use Agreement and the 2001 Cushion Gas Consent, but the 1997 Bammel Gas Financing was not included in those exceptions. To accept the Plaintiffs' interpretation that the 2004 Settlement Agreement, despite the Plaintiffs' broad release of "all claims. relating or attributable to ... the Bammel Agreements," does not restrict them from adding additional allegations relating to the Right to Use Agreement would eviscerate the meaning of the settlement agreement. Under that interpretation, an untold number of allegations regarding any of the transaction agreements could be added if the Plaintiffs could simply claim that some nexus exists to the Right to Use Agreement despite the parties' mutual intent to "resolve and set-tle certain outstanding issues." (*See* 2004 Settlement Agreement, Background, at 3.)

The Defendants have established that the Proposed Amendments are futile because they are contractually estopped by the 2004 Settlement Agreement.

2. *The Plaintiffs Are Not Collaterally Estopped to Claim that the 1997 Bammel Gas Financing was a Sham*

The Defendants do not meet the standards to show that the Plaintiffs are collaterally estopped to allege that the 1997 transaction was a sham by the ruling in *AEP Energy Servs. Gas Holding Co. v. Bank of Am.,* 05–Civ–4248 (S.D.N.Y.) (J. Griesa). Under general principles of collateral estoppel, a judgment in a prior proceeding bars a party from relitigating an issue only if "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *N.L.R.B. v. Thalbo Corp.,* 171 F.3d 102, 109 (2d Cir.1999).[4] For one, the district court's "informal findings" did not represent a final judgment. Also, the Court agrees with the Plaintiffs that the issues were not *identical.* The district court's statements concerned whether what Bank of America did was a sham and did not specifically address the allegations of the Proposed Amendments, such as whether there was an absence of a true sale of gas in the 1997 transaction.

The Defendants have not established the futility of the Proposed Amendments under the collateral estoppel doctrine.

---

4. Even under Texas law, the similar principles of collateral estoppel would not apply to the Proposed Amendments. *See Tex. Dep't of* *Pub. Safety v. Petta,* 44 S.W.3d 575, 579 (Tex. 2001).

### 3. The Defendants' "Superfluous" Argument Fails

The Defendants also argue that the motion to amend should be denied because the factual allegations in the Proposed Amendments "have no bearing on Plaintiffs' current declaratory judgment claims" and are thus superfluous and irrelevant. (Debtors' Response Memo. at 14.). The Plaintiffs respond that the allegations are not superfluous as "the absence of a true sale [in connection with the 1997 Bammel Gas Financing] would mean that BGT did not in the 2001 Pressurization Agreement grant Enron any rights in or to the Cushion Gas and Enron, therefore, could not have any executory performance obligations with respect to such gas." (Plaintiffs' Reply Memo., at 3.) Under applicable standards akin to a motion to dismiss, it is not clear that the Proposed Amendments would have no bearing on the declaratory judgment claims and thus should be denied because they are "superfluous." Viewing the Proposed Amendments in the light most favorable to the Plaintiffs, it is not clear that the factual allegations would not advance their rejection argument under *In re PCH Associates*, 804 F.2d 193, 198 (2d Cir.1986). The Defendants have not cited any cases, and the Court's research did not reveal any, where a court dismissed a proposed amendment that sought to enhance existing claims rather than add new ones because of futility.

The Defendants have not established the futility of the Proposed Amendments on the basis that they are superfluous.

### E. The Plaintiffs' Motion to Take Additional Discovery is Denied

Because the Court denies the Plaintiffs' motion to amend their complaint, it accordingly denies the Plaintiffs' request for leave to take additional discovery regarding their "no true sale" allegations.

## III. CONCLUSION

The Plaintiffs' motion for leave to amend their Second Amended Adversary Complaint and to take additional discovery is denied for the reasons of prejudice to the non-movant and futility of the Proposed Amendments.

The Debtors are to settle an order consistent with this opinion.